**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAVON E. JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 14 C 10461** |
| ) | |
| **UNITED STATES OF AMERICA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Javon E. Johnson has asserted claims against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), and against several government employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Johnson claims that while he was incarcerated in the Metropolitan Correctional Center (MCC) in Chicago, he was badly injured during an attack that correctional officers should have anticipated and failed to prevent (count one). He also alleges that correctional officers and medical staff were deliberately indifferent to his medical needs arising from the injuries he suffered in the attack (count two) and that four correctional officers retaliated against him for attempting to seek administrative redress (count three). In count four, Johnson alleges that he suffered harm caused by the United States when it breached its duty to protect him, respond to and treat his medical needs, and prevent officers from retaliating against him.

The United States has moved to dismiss count four, and the individual

defendants have moved for summary judgment on counts one, two, and three.  For the reasons stated below, the Court grants the motion for summary judgment on count three, denies it on count one, orders a *Pavey* hearing on count two, and dismisses count four only in part, at least for now.

**Background**

The following facts are undisputed except where otherwise noted.  On May 3, 2014, Johnson was attacked by Juan Frias, another inmate at the MCC.  Using the bottom of a wooden push broom that was lying on the ground in the kitchen of the two inmates' housing unit, Frias struck Johnson across the face repeatedly and inflicted severe injuries to his face and head.  After the attack, Johnson was taken to the MCC's health services unit, where he received treatment from a nurse who cleaned the blood off of Johnson and bandaged his open wounds.  Johnson was then sent to segregation. Sixteen days later, on May 19, 2014, medical staff took x-rays of Johnson's head and face.  They then sent Johnson to Thorek Memorial Hospital, where doctors administered a CAT scan that revealed three fractures in his face.

After filing several administrative grievances—which the Court will discuss in detail below—Johnson brought suit against the government and various persons employed by the Federal Bureau of Prisons.  Johnson alleges that staff at the MCC were well aware that he and Frias were at odds and that Frias posed a threat to his safety.  About two weeks before the attack, Johnson and Frias had gotten into in an argument while returning from a visitation room at the MCC.  Correctional officers quelled the disturbance, and both inmates returned to their living quarters.  Johnson also alleges that Frias and others confronted him in his cell and made verbal threats

that correctional officer DePoila witnessed firsthand.  *See* 2d Am. Compl., dkt. no. 24, at 5 ¶ 3.  He alleges that DePoila informed his supervisor, Lieutenant Williams, of this altercation.  *Id.* at 6 ¶ 5.  According to Johnson's second amended complaint, "[l]ater that day, Defendant DePoila escorted Plaintiff and Frias to the Defendant Williams'[s] office.  Defendant Williams threatened to lock both inmates in [segregation] if they did not resolve their issues and dismissed both inmates."  *Id.* at 6 ¶ 6.  Williams allegedly "never allowed Plaintiff to personally convey his concerns regarding the threat posed by Frias, Flowers, and other inmates.  Defendant Williams did not separate the two inmates into different housing units."  *Id.*

Johnson also alleges that he was not provided adequate medical attention after Frias attacked him.  He claims that when he was taken to Williams's office after the attack, he "recounted the attack and notified Defendant Williams of the severity of his apparent injuries.  Specifically, Plaintiff informed Defendant Williams that he felt that his face and jaw were fractured and requested medical attention."  *Id.* at 6 ¶ 10.  Johnson was sent to see nurse Alex Folami, who allegedly did nothing other than clean him up even though he "conveyed the severity of his pain and requested to be seen by one of the doctors on duty."  *Id.* at 7 ¶ 11.  Johnson claims to have told Folami "that he thought his face and jaw were fractured."  *Id.*  After receiving "minimal treatment," Johnson was sent to segregation without seeing a doctor or taking an X-ray.  Johnson alleges that he requested medical treatment on a daily basis to officers Crowe, Henderson, Matthews, and other MCC personnel in the segregated housing unit (SHU) and that he "filed several medical request forms seeking treatment for pain in his face, dizziness, and loose teeth as a result of the attack."  *Id.* at 7 ¶ 15.  He also claims that he made verbal

3

requests for further medical attention to MCC doctor Brij Mohan and his staff on or about May 8, 2014, but the requests were ignored.

Johnson further alleges that MCC personnel retaliated against him for attempting to utilize the grievance procedures available to him at the facility. Specifically, he claims that in retaliation for making "several requests related to MCC personnel's failure to provide medical treatment, failure to protect against known risks, and unlawful and extended detention . . . in the SHU," MCC personnel withheld or delayed providing records and grievance forms he sought, searched his cell and "shook [it] down" on a daily basis, held him in segregation for an unnecessarily long time, and discouraged inmates from testifying on his behalf at a disciplinary hearing. *Id.* at 9 ¶ 24. He also alleges that he was placed in segregation again, in retaliation for filing a request for administrative remedy regarding changes in his housing unit's visitation policy several months later. Johnson further alleges that he was transferred to a detention center in Kankakee in November 2014 "as a direct result of his collective efforts to file claims for administrative remedies" after his altercation with Frias. *Id.* at 10 ¶ 26.

The individual defendants have moved for summary judgment on Johnson's *Bivens* claims for failure to exhaust administrative remedies, and the United States has moved to dismiss Johnson's FTCA claim against it for failure to exhaust and failure to state a claim. Because the exhaustion requirements for *Bivens* claims are different from the exhaustion requirements for FTCA claims, the Court will describe separately Johnson's attempts at exhausting each.

**A.      Johnson's effort to exhaust his *Bivens* claims**

The administrative process relevant to Johnson's *Bivens* claims is the one set

forth in the Bureau of Prisons' Administrative Remedy Program.  28 C.F.R. §§ 542.10–542.19.  The program has four steps.  First, an inmate must attempt to informally resolve the matter by submitting to a member of the MCC's Unit Team (typically a correctional officer) what is known as a BP-8 form.  If informal resolution is not successful, the prisoner may file a formal grievance by submitting to the warden (by way of a counselor or correctional officer) what is known as a BP-9 form.  BP-9 grievances must be received by the warden's office within twenty calendar days of the date on which the complained-of event occurred, unless the inmate receives an extension of time by demonstrating a valid reason for delay.  After the warden receives a BP-9, he assigns the grievance a case number and sends the inmate a copy of the BP-9 with the warden's response.  If an inmate is dissatisfied with the warden's response to his BP-9, he may appeal the matter within twenty days of receiving the warden's response by submitting a BP-10 form to the Bureau of Prisons' Regional Director.  To appeal the Regional Director's response to his BP-10 form, the inmate must submit a BP-11 form to the Office of the General Counsel within thirty days of receiving the BP-10 response.

Johnson submitted a first-level, informal grievance on May 6, 2014, three days after the attack.  In his BP-8, he wrote:  "I have been wrote [sic] up for fighting, but I was assaulted by the other inmate who used a push broom (bottom part) to hit me in my face.  I want to press charges for the assault."  Pl.'s Ex. A, dkt. no. 24-1, at 2.  Unsatisfied by the response he received on his BP-8, Johnson submitted a formal grievance to the warden's office on May 17, 2014 that the warden received on May 20, 2014.  In it, Johnson wrote:

> On 4-23-14 myself and inmate Frias were sent to Lt. Williams over a
> argument [sic] that involved us and multiple other inmates, by C/O

> DePaola [sic]. Lt. Williams informed us to leave situation alone or he
> would place us in "SHU" if any more arguing. On 5-3-14 I was sitting in
> kitchen area waiting on my food when inmate Frias struck me in the face
> and head with bottom part of push broom. Frias then pinned me against
> laundry cart and began head butting me. At that time I fought him off of
> me and kept him at bay or down on the floor until officer[s] were able to
> come help. At that time I was walking out of kitchen when inmate Frias
> got up and found broom and struck me and C/O Wineberry with it. Inmate
> Cherry witnessed entire incident. Since I have been charge[d] for fighting
> and, the date on incident report is scratched out with marker. I was
> assaulted and want to press charges. And to be release[d] from SHU.

Pl.'s Ex. B, dkt. no. 24-1, at 4. Johnson also submitted another BP-9 on May 19, 2014

that was unrelated to Frias's attack. In this grievance, he complained of knee problems

and asked to see a specialist.

The warden responded to Johnson's May 17, 2014 BP-9 on July 3, 2014. The

warden wrote:

> You claim that on May 3, 2014, you were assaulted by another inmate.
> You request to press charges against the inmate and to be released from
> the [SHU].
>
> A review of this matter reveals you are in SHU pending a Discipline
> Hearing Officer (DHO) hearing regarding this incident. At the DHO
> hearing, you will have an opportunity to argue your case and present any
> witnesses or supporting documentation. If you are dissatisfied with the
> outcome of the DHO proceedings, you can appeal the decision directly to
> the region. In the meantime, however, pending the decision of the DHO,
> you will remain in SHU for safety and security concerns. With regard to
> pressing charges against another inmate, I cannot provide you with legal
> advice. Therefore, I suggest you contact your attorney regarding that
> matter.
>
> Based upon the above information, your Request for Administrative
> Remedy is denied. In the event you are not satisfied with this decision
> and wish to appeal, you may do so within 20 calendar days of the date of
> this response by submitting a Regional Administrative Remedy Appeal to
> the Regional Director . . . .

Defs.' Ex. A, dkt. no. 40-1, at 28. The warden's response did not identify the particular

form number that Johnson was to use.

On July 15, 2014, Johnson attempted to appeal this denial. He did so, however, not by submitting a Regional Administrative Remedy Appeal form (a BP-10) to the Regional Office, but rather by submitting a Central Office Administrative Remedy Appeal form (a BP-11) to the Regional Office. (Johnson alleges that his counselor gave him the wrong form and that when he tried to point this out, she insisted it was the proper form. *See* Pl.'s Decl., dkt. no. 56-1, ¶ 57.) On this form, he wrote:

> I have been housed in SHU for same incident since 5-3-14, and postponed the hearing so incident report could be rewr[itten] because the date had been altered. Initially I stated this in attached BP-9 on 5-17-14. Administration here at MCC never responded. I have also requested medical records to support my case that I was attacked, not fighting and that I suffered a fracture across my face from attack. In my request, I specifically stated the importance of these records and I still have not recieved [sic] records. The warden also states there is no legal action enforced by MCC against inmates attacking other inmates with weapons. The warden also has not responded to the fact that Lt. Williams failed to investigate or take action about the seriousness of the situation. I have not recieved [sic] any procedural due process in this incident since 5-3-14 and was constantly told I was pending hearing since. I would like all the requested above and to be cleared from incident regarding a fight because I was the victim here.

Pl.'s Ex. C, dkt. no. 24-1, at 6. The Regional Office returned Johnson's submission and told him he had submitted the wrong form. Johnson then filed a new appeal on a BP-10 form and submitted it to the Regional Office on August 10, 2014. On this form, Johnson wrote:

> First, I did not receive regional response until 7-30-14 from counselor Robert Johnson. It was not ever in a[n] envelope addressed to me or any envelope period. Second, "my" counselor could not give me the correct BP Form until August 6, 2014. Also, this was the address provided to me initially by case manager Jackson to file first or on 7-21-14. This is not my appeal to the actual DHO decision, because I have not received that info yet. I was housed in SHU for 74 days, during which time I filed BP forms on 5-17-14 regarding the invalid report. MCC administration never corrected the incident report or addressed BP form until after the first DHO hearing on 6-29-14. The DHO referred the report back for a rewrite for the

same reasons in my original BPs.  I remained in SHU three additional weeks for the rewrite, totaling 74 days.  Prior to hearing I requested medical records for evidence to support my defense, which I did not receive.  MCC staff was aware of a previous incident and threat to my safety and failed to respond/prevent the attack that followed on 5-3-14.  To hide this fact, staff also charged me with rule violations.  I was attacked with a broom & had two fractures in my face.  There are two different reports, one states that me & inmate Frias was fighting (first), the other states inmate Frias hit C/O with broom during fight but not that I was hit with broom.

Pl.'s Ex. D, dkt. no. 24-1, at 8.

The Regional Office responded to Johnson's appeal on September 3, 2014.  In this response, Regional Director Paul Laird wrote that Johnson alleged he received an incident report for fighting but contended on appeal that he was the victim of an assault. He further wrote:

> You make no specific request for relief.
>
> We have reviewed your appeal and the Warden's response dated July 3, 2014.  Records indicate on July 17, 2014, subsequent to the Warden's response, your [sic] were found to have committed the prohibited act of Fighting with another person, code 201 by the [DHO].  You will be issued a written report which will advise of the findings, specific evidence relied on, sanction(s) and reasons for the sanction(s).  According to Program Statement 5270.09 Inmate Discipline Program, "You may appeal the DHOs action(s) through the Administrative Remedy Program."  You have 20 calendar days to appeal after receiving a copy of the report.
>
> Based on the above information, your Regional Administrative Remedy Appeal is for informational purposes only.
>
> If you are dissatisfied with this response, you may appeal to the Office of General Counsel . . . .

Def.'s Ex. A, dkt. no. 40-1, at 30.  Johnson did not file a second Central Office Remedy Appeal form (another BP-11) after this.

## B.     Johnson's effort to exhaust his FTCA claim

FTCA exhaustion does not require compliance with the Bureau of Prisons'

Administrative Remedy Program but rather requires claimants to submit what is known as a Standard Form 95 (SF-95). On May 27, 2014, the Bureau of Prisons received an SF-95 from Johnson. In it, Johnson sought $500,000 to compensate him for the personal injuries he sustained in Frias's attack. Where the form requested that he state the basis of his claim, Johnson wrote:

> Claimant was sitting in kitchen area of FIR.17, when [Frias] struck him multiple times in the face with the bottom part of a push broom. Claimant suffered two fractures, one under eye socket and one from cheek bone to jaw bone; swelling of eye including blood cloud, bru[i]sing in face and multiple scrape[s] and scratches, with bite marks, neck spasms and loose teeth with nerve damage.

Pl.'s Ex. E, dkt. no. 24-1, at 11. Where the form requested details regarding the nature and extent of his injuries, Johnson wrote: "Fracture's [sic] from under eye and from cheek to jaw bone. Eye injury, blood clouds and photo sensitiv[i]ty. Multiple bru[i]ses and scratches. Neck pain and spasms." *Id.*

The Office of Regional Counsel for the Bureau of Prisons responded in writing to his claim on September 30, 2014. In its letter, it stated that "[i]nvestigation of your claim did not reveal you suffered any injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment." *Id.* at 13. The letter served as notice of final denial of Johnson's claim, and it alerted him that if he was dissatisfied with the result of his complaint, he could file suit in federal court within six months.

Three months later, Johnson filed a *pro se* lawsuit in this Court. Johnson submitted his first amended complaint in March 2015. The same day the Court received Johnson's amended complaint, it appointed counsel, who submitted a second amended complaint in July 2015. The second amended complaint asserts *Bivens*

claims under section 1983 for deliberate indifference to Johnson's safety (count one), deliberate indifference to Johnson's medical needs (count two), and retaliation (count three) against the individual defendants. It also asserts a negligence claim against the United States under the FTCA (count four).

**Discussion**

The individual defendants have moved for summary judgment on counts one, two, and three for failure to exhaust administrative remedies. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Failure to exhaust is an affirmative defense, and Defendants have the burden of proof." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016) (internal citation and quotation marks omitted). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hernandez*, 814 F.3d at 840.

The United States has moved to dismiss count four for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). To state a viable claim, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).

**A.    Johnson's *Bivens* claims (counts one, two, and three)**

Counts one, two, and three assert claims against the individual defendants.

Under *Bivens*, a plaintiff may bring suit against individuals who act under color of federal

law to violate the plaintiff's constitutional rights.  *See Bivens*, 403 U.S. at 396; *Snead v.*

*Unknown No. of U.S. Bureau of Prisons Corr. Officers*, 308 F. App'x 18, 19 (7th Cir.

2009).  In count one, Johnson alleges that Lieutenant Williams and Officer DePoila were

deliberately indifferent to his safety, in violation of his right to be free from cruel and

unusual punishment under the Eighth Amendment.  In count two, Johnson  alleges that

lieutenants Williams and Crowe, officers Matthews and Henderson, Dr. Mohan, and

nurse Folami were deliberately indifferent to his medical needs in violation of his Eighth

Amendment rights.  In count three, Johnson alleges that MCC warden Kuta, lieutenants

Crowe and Burning, and officer Henderson violated his constitutional rights by

retaliating against him for engaging in the protected activity of seeking administrative

redress.

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate

exhaust 'such administrative remedies as are available' before bringing suit to challenge

prison conditions."  *Ross v. Blake*, No. 15-339, 2016 WL 3128839, at *3 (U.S. June 6,

2016) (quoting 42 U.S.C. § 1997e(a)).  Under the PLRA, a district court must dismiss a

case if the plaintiff fails to exhaust available administrative remedies before filing suit.

*See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Perez v. Wis. Dept. of Corrs.*, 182 F.3d

532, 535 (7th Cir. 1999).

Defendants seek summary judgment on each of Johnson's *Bivens* claims on the

ground that Johnson failed to exhaust administrative remedies. They argue that in his informal and formal grievances, Johnson never alleged that MCC personnel failed to protect him, acted with deliberate indifference to his medical needs, or retaliated against him for attempting to secure administrative remedies. Pointing to the Seventh Circuit's opinion in *Strong v. David*, 297 F.3d 646 (7th Cir. 2002), Johnson responds that he exhausted his administrative remedies because his grievances sufficiently put defendants on notice of his claims. He contends that because the Bureau of Prisons does not burden claimants with the equivalent of a fact-pleading or code-pleading requirement, he successfully brought his claims through the administrative process by providing general notice of the wrongful acts that caused him injury.

In *Strong*, the Seventh Circuit explained what kind of information must be included in a grievance in order for the grievance to satisfy exhaustion requirements. The court reiterated its holding in *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), that "prisoner[s] must file complaints and appeals in the place, and at the time, the prison's administrative rules require." It then went on to "add the logical extension that the grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. The court explained that it is the responsibility of prison administrators to determine "what is necessary to handle grievances effectively." The state of Illinois, in whose prison the plaintiff in that case was incarcerated, had "not established any rule or regulation prescribing the contents of a grievance or the necessary degree of factual particularity." *Id.* at 650. The court determined that "when the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the

grievant need not lay out the facts, articulate legal theories, or demand particular relief."
*Id.*

Defendants have produced copies of the Program Statement for the Bureau of Prisons Administrative Remedy Program, institution supplements to that program statement, and the MCC's Inmate Admission and Orientation Handbook. Neither these documents nor the grievance forms themselves indicate that either the MCC or the Bureau of Prisons imposes requirements on prisoners beyond those set forth in *Strong*, and defendants do not argue otherwise.

Even construing Johnson's grievances liberally and applying *Strong*'s lenient standard, Johnson's informal and formal grievances cannot be read to have leveled allegations related to deliberate indifference to his medical needs or retaliation for submitting grievances. In neither his BP-8 nor the BP-9 concerning his assault did Johnson make allegations concerning acts or omissions related to the medical care he received. His grievances indicate that Frias assaulted him and injured him and that he was placed in segregation for fighting even though he was a victim rather than an instigator. He does not describe his medical care, much less deficiencies in that care that gave rise to an injury or constitutional violation. Johnson's unrelated BP-9 describing his knee pain is also insufficient, if it is relevant at all, because it likewise does not "object intelligibly to some asserted shortcoming," *Strong*, 297 F.3d at 650, that is relevant to Johnson's claim before this Court that MCC personnel were deliberately indifferent to the medical needs he experienced in the wake of Frias's attack (which did not involve his knee). Similarly, Johnson did not complain in his grievances about anything resembling retaliation on the part of correctional staff. His statement

13

that he had been injured in the attack is not enough to notify officials that he received inadequate medical care, and his contention that he should not have been placed in segregation is not sufficient to notify officials that he felt his placement there was done in retaliation for submitting grievances.

Johnson argues that any failure to exhaust these claims should be excused because defendants caused it. As the Supreme Court recently reiterated, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 2016 WL 3128839, at *3; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "Prison officials may not take unfair advantage of the exhaustion requirement, [] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Kaba*, 458 F.3d at 684 (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)). "When a jail official invites noncompliance with a procedure the prisoner is not required to follow that procedure. When jail personnel mislead inmates about how to invoke the procedure the inmates can't be blamed for failing to invoke it." *Swisher v. Porter Cty.. Sheriff's Dept.*, 769 F.3d 553, 555 (7th Cir. 2014) (internal citations omitted). Johnson argues that MCC personnel responded too slowly, provided him the wrong forms to appeal the denial of his grievance, and barred him from accessing literature and resources by keeping him in segregation. This, he contends, rendered administrative remedies unavailable and absolved him of his responsibility to comply with exhaustion requirements.

To determine whether MCC personnel prevented him from filing his "complaints and appeals in the place, and at the time, the prison's administrative rules require,"

*Pozo*, 286 F.3d at 1025, Johnson asks the Court to hold a hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). "A *Pavey* hearing serves a limited but important role: it helps the judge decide whether the court or the prison is the proper forum for the prisoner's grievance." *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015). "A proper *Pavey* hearing should be conducted *before* an adjudication on the merits." *Id.* "The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion . . . ." *Id.* at 591.

If one views the facts and drawing reasonable inferences in Johnson's favor, as the Court must at this stage of the litigation, there is a contested issue of fact regarding whether the acts or omissions of MCC personnel rendered administrative remedies unavailable, at least on Johnson's claim that personnel were deliberately indifferent to his medical needs. In the sworn declaration Johnson submitted in response to defendants' motion for summary judgment, he states that at the time he submitted the grievance forms in the record, he had not yet learned the extent of his injuries and had no way of knowing he had received substandard medical care. Pl.'s Decl., dkt. no. 56-1, ¶ 30. He alleges that on Friday, May 16, 2014, he showed Folami a BP-8 form that he planned to submit in which he complained that he was receiving inadequate medical care, and that Folami discouraged him from doing so by promising to take him to see a doctor the following Monday. *Id.* ¶ 25. Johnson says his suspicions about his medical care were confirmed when, on Monday, May 19, 2014, he learned from doctors at Thorek Memorial Hospital that he had several fractures that could no longer be treated due to the passage of time. *Id.* ¶¶ 31–32. Most importantly for present purposes, Johnson claims that the following day, he submitted the BP-8 form he had previously

shown Folami. *Id.* ¶ 34. Defendants dispute Johnson's account, but the Court cannot appropriately make credibility assessments without the benefit of a hearing. Defendants' motion is denied with regard to count two pending a *Pavey* hearing.

A *Pavey* hearing is not needed on count three. In his affidavit, Johnson claims that he submitted numerous BP-8 forms while he was being held in segregation. He does not claim that the BP-8 forms he claims to have submitted alleged the retaliation he alleges in his lawsuit. In later grievances, he alleged that he was being treated unfairly, but nothing in the papers submitted to the Court suggests that he continued to advance his claims through the grievance process or that he was prevented or discouraged from doing so. Because Johnson failed to exhaust administrative remedies regarding his retaliation claim, the Court grants summary judgment in favor of defendants on count three.

No *Pavey* hearing is required on count one either, but for different reasons. Liberally construed, Johnson's informal and formal grievances concerning his altercation with Frias were sufficient to place defendants on notice that Johnson was raising a claim resembling the one he asserts in count one. Both his BP-8 form and his BP-9 form stated that Frias attacked him by using the bottom of a push broom to hit him repeatedly, suggesting that MCC personnel failed to protect him from harm and permitted Frias to gain control of an object he could wield as a weapon. Johnson included additional details in his BP-9, indicating that he was sent to lieutenant Williams (presumably by DePoila) after his first argument with Frias. Johnson wrote that Williams told him and Frias to stop arguing or face sanctions. This can be reasonably read to say that Williams and DePoila knew that Frias was butting heads with Johnson

and that these officers should have done more to prevent the eventual attack. Johnson raised this issue again in a BP-10 form and a BP-11 form, though he submitted these forms out of order. Simply put, Johnson alerted defendants that he sought redress for their involvement in permitting the assault he alleged Frias committed against him, and he did so by filing grievances and appeals at every available level.

Defendants argue that Johnson technically never submitted a final appeal because he sent his BP-11 to the Regional Office rather than the Central Office and did so prior to filing a BP-10. After the Regional Office returned the BP-11 to him, Johnson filed a BP-10 with the Regional Office that was ultimately denied. He did not submit his original BP-11 or any other BP-11 to the Central Office following receipt of the Regional Office's decision denying his request for relief. Accordingly, defendants argue, Johnson failed to exhaust his administrative remedies.

The Court disagrees. Johnson contends that he was given the wrong form and encouraged to send it to the wrong place at the wrong time, and defendants have not shown this to be untrue. When Johnson received the correct form, he submitted it to the Regional Office. To the extent he failed to comply with the Bureau of Prisons administrative remedy request policy, it was because administrative remedies were not available as a result of the "muddle" that the MCC created when it placed him in segregated housing, forced him to rely on his counselors to provide him with grievance forms, and provided the wrong forms and incorrect instructions. *See Swisher*, 769 F.3d at 555.

Johnson completed an informal grievance form, a formal grievance form, a regional appeal form, and a central office appeal form. He sent his central office appeal

form to the wrong office at the wrong time, but he did so because MCC officials led him to believe that he was complying with the rules for filing and advancing his grievance. In sum, Johnson exhausted all available administrative remedies on his *Bivens* claim that Lieutenant Williams and Officer DePoila were deliberately indifferent to his safety. The Court accordingly denies defendants' motion for summary judgment on count 1.

**B.      Motion to dismiss Johnson's FTCA claim (count 4) under Rule 12(b)(6)**

In count four, Johnson alleges that the government "failed to act with ordinary care and breached its duty of care owed to Plaintiff," 2d Am. Compl., dkt. no. 24, ¶ 52, a duty that he alleges "included, but was not limited to, the duty to avoid inmate access to dangerous objects, the duty to protect Plaintiff against known risks of harm, the duty to protect Plaintiff against retaliation, and/or the duty to respond to and/or treat Plaintiff's medical needs." *Id.* ¶ 50.  Johnson contends that the "direct and proximate result" of "the United States' breach of its duty of care," he "suffered and continues to suffer personal injuries, pain, emotional distress, mental anguish and loss of dignity." *Id.* ¶ 53.

Under the doctrine of sovereign immunity, the United States may not be sued unless it consents to suit. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA, however, is a limited waiver of sovereign immunity that permits "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see LM ex rel. KM v. United States*, 344 F.3d 695, 698 (7th Cir. 2003). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d

753, 758 (7th Cir. 2014).  The tort law of the state in which the tort occurred (here, Illinois) applies when determining whether a duty was breached and whether such breach proximately caused plaintiff's injury.  *See Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).

Before an inmate may bring an FTCA claim, he must "have first presented the claim to the appropriate Federal agency" and received a final written denial from that agency.  28 U.S.C. § 2675(a).  Federal regulations provide that a claimant "presents" his claim by submitting an executed SF-95.  28 C.F.R. § 14.2(a).  This is not a jurisdictional prerequisite, but rather "a condition precedent to the plaintiff's ability to prevail."  *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (internal quotation marks omitted).

The government moves to dismiss Johnson's FTCA claim on three grounds. First, it contends that Johnson failed to exhaust his administrative remedies because his SF-95 did not allege negligent failure to "avoid inmate access to dangerous objects," "protect . . . against known risks of harm," or "protect . . . against retaliation" by prison officials.  It also contends that he did not exhaust any ordinary negligence claims (as opposed to professional negligence claims) based on the failure of non-medical personnel to "respond to and/or treat [Johnson's] medical needs."  Second, the government argues that by failing to submit a certificate of merit required to pursue medical malpractice claims under Illinois law, Johnson has failed to state an FTCA claim based on medical personnel allegedly failing to respond to or properly treat his medical needs.  Third, the government contends that even if the SF-95 adequately exhausted all of Johnson's claims and he is not required to submit a certificate of merit, he has failed

to plead the elements of his tort claims.

Like *Bivens* exhaustion, the crucial question for the purposes of exhaustion under the FTCA is whether the SF-95 placed the agency on notice of Johnson's claim. Johnson argues that his SF-95 did so, but to the extent that it did not, the agency was nonetheless placed on notice because the SF-95 should be read in conjunction with his grievance forms and analyzed in the context of the numerous complaints he says he verbally lodged with MCC personnel. Johnson cites no authority for the contention that other grievances and extraneous verbal complaints should be considered when evaluating whether an SF-95 contains sufficient detail to satisfy the FTCA's exhaustion requirement. The dearth of authority makes sense, because finding exhaustion based on a vague SF-95, grievances alleging deliberate indifference, and the prisoner's alleged remarks to officers and counselors in the prison would be antithetical to the purpose of setting forth a formal claim presentation procedure in the first place.

Evaluating the SF-95 alone, the Court agrees with the government that Johnson failed to set forth details that would place the agency on notice that he believed the government negligently failed to protect him against retaliation by prison officials. Nothing in the SF-95 relates to any of the allegedly retaliatory action that Johnson alleges in his complaint. The Seventh Circuit has stated that one can pursue an FTCA claim "following an administrative demand that does not comply with every jot and tittle of the rules defining a claim." *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997). "[I]f the claim would have been apparent to a legally sophisticated reader of the form, then [the Court] will charge the agency with notice of that claim and deem it to have been exhausted." *Palay*, 349 F.3d at 426. But even a legally sophisticated reader

would have no way of knowing by reading Johnson's SF-95 that he wished to assert that the United States negligently failed to protect him against retaliation by MCC personnel.  And despite his argument to the contrary, the record and briefs show that the "muddle" that prison personnel caused when Johnson attempted to exhaust his *Bivens* claims had nothing to do with his SF-95.  This did not render FTCA administrative remedies unavailable.

Johnson also failed to exhaust negligence claims based on the failure of non-medical personnel to "respond to and/or treat [his] medical needs."  Johnson's SF-95 states that he suffered severe injuries as a result of an attack at the hands of another inmate; it does not indicate that these injuries were caused or exacerbated by the failure of non-medical personnel to respond to requests for medical care or observe that he needed it.  Johnson claims that he requested another SF-95 once he learned the extent of his injuries and discovered that prison officials had negligently failed to respond to his medical needs, but that he was never given the new form and could not retrieve one himself while locked up in segregation.  *See* Pl.'s Decl., dkt. no. 56-1, ¶ 35.  But this does not explain why Johnson never submitted another SF-95 even after leaving segregation and after being transferred to a new facility.  The FTCA requires the plaintiff's administrative claim to be filed within two years of the date a cause of action accrues.  *See* 28 U.S.C. § 2401(b).  Johnson contends he learned on May 19, 2014 that non-medical personnel negligently breached their duty of care.  Even after leaving segregation seventy-five days later (according to Johnson's declaration, *see* Pl.'s Decl., dkt. no. 56-1, ¶ 63), even after the Court appointed counsel in March 2015 to assist him with his lawsuit, and indeed even after the government filed the present motion pointing

out the deficiency, Johnson never filed a new SF-95 asserting that non-medical personnel negligently failed to respond to his medical needs.[1] Johnson failed to exhaust his administrative remedies within the statute of limitations under the FTCA on this aspect of his claim.

The same cannot be said of Johnson's allegations that the United States, by and through the negligent acts of its employees acting within the scope of their employment, negligently breached a duty to protect his safety. Johnson's SF-95 stated that he suffered serious injuries as a result of another inmate finding a push broom in the kitchen and using it as a weapon to perpetrate an assault against Johnson. By timely filing the SF-95 with this information included, Johnson provided the Bureau of Prisons with notice of his claim. Once he received the letter finally denying his claim, Johnson had exhausted available administrative remedies and was free to file suit in this Court. Johnson then filed suit in this court alleging duty, breach, factual and legal cause, and harm. *See Dezort v. Vill. of Hinsdale*, 35 Ill. App. 3d 703, 707 n.1, 342 N.E.2d 468, 471 (1976) (Under Illinois law, jailers owe "a duty to the prisoner to keep him safely and to protect him from unnecessary harm" and "must exercise reasonable and ordinary care for the life and health of the prisoner."). He has thus stated an FTCA claim based on the United States negligently failing to protect him from a known hazard.

Finally, the government concedes that Johnson exhausted a tort claim of professional negligence against the United States based on the acts and omissions of

---

[1] The Court is somewhat perplexed by the fact that appointed counsel did not file, or at least assist Johnson in filing, an SF-95 form or forms on the medical care and retaliation claims at some point following their appointment, at least after the United States filed the present motion. The Court intends to inquire of plaintiff's counsel about this at the June 21, 2016 status hearing.

medical professionals acting in their official capacities. It argues, however, that Johnson has failed to state this claim because he never submitted the certificate of merit that Illinois law requires for any complaint asserting claims of medical malpractice. As the United States points out, the Illinois Healing Art Malpractice Act provides that in any action for damages "by reason of medical, hospital, or other healing art malpractice," a plaintiff must file an affidavit stating that the affiant has reviewed the facts with a knowledgeable and qualified "health professional" who practices in the particular field and that the health professional has determined in a written report "that there is a reasonable and meritorious cause" for the filing of the lawsuit. 735 ILC 5/2–622(a). A copy of the health professional's written report must also be included. *Id.* Failure to satisfy this requirement is grounds for dismissal. *See, e.g.*, *Smith v. Walton*, No. 14 C 514 JPG SCW, 2015 WL 5062510, at *1 (S.D. Ill. Aug. 26, 2015); *Ortiz v. United States*, No. 13 C 7626, 2014 WL 642426 (N.D. Ill. Feb. 19, 2014); *Williams v. Erickson*, 21 F. Supp. 3d 957, 958–59 (N.D. Ill. 2013); *Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923 (N.D. Ill. Nov. 24, 2010). Johnson did not submit a certificate of merit or a written report, so the United States seeks dismissal of his claim.

Johnson believes that his claim does not require any certification because it is not a malpractice claim. Although the certification requirement applies only to medical malpractice claims, Illinois courts have held that even where a complaint does not refer to a claim as malpractice, it may nonetheless require a certificate of merit if it sounds in malpractice. *See Jackson v. Chi. Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill. App. 3d 906, 909, 823 N.E.2d 1055, 1057–58 (2005). To determine whether a claim sounds in malpractice, a court may consider "(1) whether the standard of care involves

procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiffs' case." *Id.* at 909, 823 N.E.2d at 1058. Citing *Warren*, Johnson argues that a certificate of merit is not required here because his injuries and need for medical attention were obvious.

*Warren* does not support Johnson's argument. The court in *Warren* found a certificate of merit unnecessary for claims lodged against non-medical personnel whose duty of care was simply to "exercise ordinary and reasonable care for the preservation of [prisoners'] health and life under the circumstances of the particular case." *Warren*, 2010 WL 4883923, at *11 (internal quotation marks omitted). The court went on, however, to dismiss claims asserted against medical personnel because they "would be held to a standard of care that applies distinctively medical knowledge or principles." *Id.* at *12. The same can be said here: insofar as Johnson's claims are predicated on the acts or omissions of Dr. Mohan or nurse Folami, they sound in malpractice and must be accompanied by a certificate of merit.

Johnson requests additional time to submit a certificate of merit because he has not had the opportunity to procure the assistance of a medical professional who can examine him in person and sign an affidavit on his behalf. The government urges the Court not to give Johnson any additional time because the Court granted Johnson an extension of time to respond to the government's motion so that Johnson could submit the appropriate paperwork, which he never did. The government identifies no other reason to deny Johnson one last opportunity to submit a certificate of merit and cites no authority that suggests the Court may not grant him any more time.

The Court will deny defendants' motion to dismiss count four on the condition that Johnson submit a certificate of merit from a qualified physician within sixty days of this ruling. If a qualified medical professional is unwilling or unable to provide a certificate of merit without an in-person evaluation, Johnson must submit documentation to the Court within the next twenty-one days explaining why such an evaluation is necessary and what kind of arrangements would need to be made in order to accommodate it. The dates set forth herein are firm—if the Court does not receive these submissions by the dates set, the Court will grant the government's motion to dismiss.

**Conclusion**

For the foregoing reasons, the Court grants summary judgment in favor of defendants on count three but otherwise denies defendants' motion for summary judgment [dkt. no. 38]. The Court will conduct a *Pavey* hearing to determine whether prison officials prevented Johnson from exhausting administrative remedies on count two.

The Court also dismisses Johnson's FTCA claims based on failure to protect against retaliation by Bureau of Prisons personnel and non-medical personnel's negligent failure to respond to his medical needs, but otherwise denies the government's motion to dismiss [dkt. no. 42]. Johnson may proceed on his FTCA claim based on his allegations that the government breached its alleged duty to protect him against known risks of harm. If Johnson wishes to proceed on his FTCA claim sounding in professional negligence, he must submit a certificate of merit as required under Illinois law by no later than Monday, August 22, 2016. If a qualified person is unwilling or unable to provide a certificate of merit without an in-person evaluation, Johnson must

provide documentation to the Court by no later than Wednesday, July 13, 2016. The case remains set for a status hearing on June 21, 2016 at 9:30 a.m. as previously ordered.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 20, 2016