IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVON JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 14 C 10461 |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Javon Johnson has asserted claims against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), and against several government employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Johnson's claims arise from his incarceration at the Chicago Metropolitan Correctional Center (MCC). On May 3, 2014, another inmate attacked Johnson, striking him across the face with a wooden push broom. Johnson suffered severe injuries to his face and head. He was taken to the health services unit, where a nurse cleaned and bandaged his wounds. Johnson was then taken to segregation. On May 19, 2014, medical staff took x-rays of Johnson's head and sent him to Thorek Memorial Hospital. At the hospital, a CT scan revealed three fractures to bones in Johnson's face.

In count two of his complaint, Johnson asserts a claim that MCC personnel were deliberately indifferent to his medical needs. He essentially claims that treatment was unreasonably delayed or denied between May 3 and May 19, 2014. Defendants argue

that Johnson failed to exhaust prison grievance remedies with regard to this claim, contrary to the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The Court denied their motion for summary judgment due to significant factual disputes but ordered an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The hearing was conducted in late October 2016. This constitutes the Court's findings of fact and conclusions of law.

On May 3, 2014, the day of the attack, correctional staff at the MCC took Johnson to the health care unit. He was seen by a nurse named Alex Folami and told Folami about his facial pain, indicating that he thought his jaw might be broken. No x-rays were taken. Johnson was prescribed ibuprofen. He was then placed in a segregation unit at the MCC.

The next time that Johnson was examined by medical personnel at the MCC for his facial injuries appears to have been on May 15, 2014, when he was examined at the segregation unit by a nurse named Kistler and was prescribed additional pain medication. Either as a result of that visit or via some other mechanism, Johnson was examined by Dr. Brij Mohan at the medical unit on May 19, 2014. An x-ray was taken and showed a left zygomatic arch fracture. For this reason and because of the symptoms that Johnson reported, he was sent to the emergency room at Thorek Hospital.

Johnson's deliberate indifference claim focuses on the period from May 3 through May 19, a total of sixteen days. He alleges that correctional and medical staff were deliberately indifferent to his need for further medical care during this period. Specifically, in a memorandum filed prior to the *Pavey* hearing, Johnson said he is

2

"willing to agree that the gravamen of his *Bivens* case as to medical treatment is the deliberate indifference occurring on May 3, 2014 and continuing until his ultimate referral to Thorek Hospital on May 19, 2014 when his factual fractures were diagnosed after they had improperly healed." Pl.'s Mot. for Prehr'g Conf. ¶ 4.

At the hearing, Johnson testified that on May 4, the day after the attack, he still had significant pain, so he began to ask for additional medical attention. He did not know the nature of his injuries and did not know what type of further treatment he needed. He also testified that he made repeated oral requests to correctional staff for additional medical care. Johnson testified that he was told he had to talk to medical staff; he asked correctional staff to contact medical staff on his behalf; and he was later told by correctional staff that he would have to fill out a sick call slip. Finally, Johnson testified that over the period at issue, he filled out several sick call slips complaining about his facial pain and asking to see a doctor. The Court found Johnson's testimony on these points to be credible.

Johnson testified that on May 8, a medical doctor, Dr. Mohan, came through the segregation unit. Johnson spoke with Dr. Mohan through the chuckhole on his cell door and, he says, told Dr. Mohan about his facial pain. Dr. Mohan, Johnson says, took no action. The Court found this testimony credible.

There is no record of Johnson submitting any written grievances (as contrasted with sick call slips) between May 4 and May 16 regarding the delay or denial of follow-up medical treatment for his facial injuries. During this period, Johnson submitted grievance forms on other subjects, including one on May 6 objecting to being written up for the May 3 fight and asking to press charges and another on May 14 seeking further

3

medical care for an earlier knee injury. Johnson testified that on May 16, he asked a counselor for additional grievance forms and submitted on that date a grievance regarding the denial of medical care for his facial injuries. There is no record of such a grievance having been submitted, and defendants deny that Johnson submitted one. The Court need not resolve this conflict in the evidence for the reasons described below.

Defendants argue that Johnson failed to exhaust administrative remedies regarding his claim for denial or delay of medical care for his facial injuries because he never even submitted a grievance, let alone pursue it to conclusion. They seek dismissal of Johnson's medical care claim on this basis. In response, Johnson relies on the Seventh Circuit's decision in *White v. Bukowski*, 800 F.3d 392 (7th Cir. 2015). The plaintiff in *White* alleged deliberate indifference to her need for prenatal care and for prompt transport to a hospital to deliver her baby while she was in temporary custody at a county jail. She arrived at the hospital about eight months pregnant. After being at the jail for eleven days, the plaintiff experienced pain and was transported to a hospital, where she gave birth. The child suffered serious birth defects, allegedly due to oxygen deprivation caused by displacement of the placenta. The plaintiff contended that if the defendants had taken a proper medical history when she first arrived at the jail and had promptly responded to her requests for medical assistance, she would have received appropriate medical treatment sooner and the injury to her child would not have occurred. *See id.* at 393-94. Defendants sought dismissal due to failure to exhaust. In response, the plaintiff contended that there were no grievance remedies were available at the relevant time. The Seventh Circuit agreed. The court noted that under the PLRA,

4

a plaintiff must exhaust "such administrative remedies *as are available*." *Id.* at 395 (quoting 42 U.S.C. § 1997e(a)) (emphasis added). It cited the following as an example of unavailability:

> "Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust."

*Id.* (quoting *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 538 (7th Cir. 1999)). With regard to the plaintiff in *White*, the court stated:

> [H]ow could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest? Yet that appears to be the situation of the plaintiff in this case even more clearly than that of the prisoner in the hypothetical case discussed in *Perez v. Wisconsin Department of Corrections, supra*. In short, if one has no remedy, one has no duty to exhaust remedies.

*Id.* The court specifically rejected decisions from other circuits holding that "even if the jail or prison can do nothing whatever for the complaining prisoner, and even if that's obvious to a prisoner who not unreasonable believes himself to be a victim of deliberate indifference . . .—the prisoner must file a grievance if he is to preserve his right to sue." *Id.*

Johnson contends, like the plaintiff in *White*, that given the short amount of time that passed from the date of his physical injury (May 3) until the date he was examined by a physician and given an x-ray (May 19), he "could not have known that his facial fractures existed, of his options for treatment, and that if not treated they would become permanent." Pl.'s Motion for Prehr'g Conf. ¶ 2. He contends that the MCC's grievance procedures "would not have been sufficient to prevent the harm done by delay in treatment and diagnosis" due to the short time interval involved. *Id.* ¶ 3.

5

The time interval is, indeed, short. And although Johnson—like the plaintiff in *White*—subjectively believed he needed further treatment, and believed (incorrectly, it turns out) that his jaw was broken, he testified, credibly, that he repeatedly asked for additional medical treatment starting on May 4. That was the appropriate first step for Johnson to follow. He testified, again credibly, that correctional staff reported back to him that he had to submit a sick call form and that he then did so; this was the appropriate next step. Johnson's claim for denial or delay in medical treatment did not ripen until it became apparent that his written requests for further medical treatment—the hoop that prison staff told him he had to jump through—were being ignored. This would not have been, at a minimum, until a number of days after May 4. It was only then that any obligation to initiate administrative remedies even arose. Indeed, during closing argument following the *Pavey* hearing, in response to a question by the Court, defense counsel conceded that if Johnson had filed a grievance *by May 16*, that would have been timely. But May 16, 2014 was a Friday, and the next weekday, May 19, 2014, was the day that Johnson actually saw Dr. Mohan and was x-rayed. It appears that by this point—likely due to his examination by nurse Kistler on Thursday, May 15—Johnson's repeated requests for further medical treatment had actually borne fruit. But by then (May 19), Johnson contends, the damage had been done.

In short, by the time Johnson was obliged to *begin* pursuing the MCC's grievance procedures, there is no basis in the record to find that it would have benefitted him—i.e., that it would have gotten him a physician visit and an x-ray any earlier than he actually got them on Monday, May 19. For this reason, as in the *White* case, there were no administrative remedies that were "available" to Johnson at the relevant time that had

6

any hope of providing him with relief.

For these reasons, the Court overrules defendants' exhaustion defense with regard to Count 2, Johnson's claim of denial of medical care. The case is set for a status hearing on January 5, 2017 at 9:30 a.m. in order to set a schedule for the remainder of discovery and pretrial proceedings.

Date: December 27, 2016                                 _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge